2334

The STATE, Respondent v. John C. ANDERSON, Appellant.

(458 S.E. (2d) 56)

Court of Appeals

HOWARD, J., dissented and filed opinion.

*Chief Attorney Daniel T. Stacey, S.C. Office of Appellate Defense, Columbia, for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr., and Asst. Atty. Gen. Rakale B. Smith, Columbia, and Sol. Dudley Saleeby, Jr., Florence, for respondent.*

Heard Mar. 9, 1995.

Decided Apr. 17, 1995; Reh. Den. May 23, 1995.

GOOLSBY, Judge:

John C. Anderson was indicted for driving under suspension (DUS), driving under the influence of intoxicating liquors (DUI), and violation of the Habitual Traffic Offender Act. A jury found him guilty on all three charges. The issue on appeal involves the question of whether the trial court erred in denying Anderson's motion to sever his habitual traffic offender charge. We affirm.

On March 21, 1993, Trooper Ben Hicks testified he observed Anderson, who was driving a late model station wagon, make a right turn out of a side road, cut the turn too sharp, and

drive a short distance on the shoulder of the road towards Trooper Hicks with the station wagon's high beam headlights on; Trooper Hicks turned his patrol car around and put his blue lights on to signal Anderson to pull over; Anderson's station wagon was weaving and its speed was about ten to fifteen miles per hour; Anderson pulled over at a convenience store about ¾ mile from the point that he entered the road; Trooper Hicks asked Anderson for his driver's license and for his bill of sale because the station wagon had no license tag; Anderson did not have either of these documents; Trooper Hicks asked Anderson to step out of the station wagon and produce some kind of identification and Anderson, at length, produced a valid State of South Carolina identification card; Trooper Hicks noted "there was something obviously wrong with [] Anderson. A strong odor of alcoholic beverage [was] upon his person and in [his] automobile. . . . [H]e was unsteady on his feet, couldn't find his I.D. card for me, and I felt like he was obviously under the influence of alcohol."; Trooper Hicks arrested Anderson for driving under the influence; Trooper Hicks found a pint bottle of liquor with an open seal under the driver's seat of Anderson's station wagon; Anderson's license was at that time under suspension; and Anderson took a breathalyzer test that registered his blood alcohol level at 0.19.

Anderson testified he cut the right turn too sharp because he was trying to avoid a hole in the road; he was driving his pregnant daughter home because she was feeling dizzy and therefore not able to walk the distance to her house; he had only had two drinks earlier that evening; and he did not blow into the breathalyzer machine.

Anderson argues the trial court erred in denying his motion to sever the habitual traffic offender charge from the DUS and DUI charges. He maintains that a single trial on all three charges brought evidence of prior convictions before th jury and deprived him of a fair trial on the DUS an DUI charges because the jury could have been prejudiced by its knowledge of his prior convictions for those two offenses.

The allegedly prejudicial evidence that the solicitor offered at Anderson's trial to prove the habitual traffic offender violation was a letter to Anderson from the South Carolina High-

way Department that notified Anderson he had been declared a habitual traffic offender and showed a record of the traffic violations involving prior DUS and DUI charges that resulted in the habitual traffic offender suspension. *See* S.C. Code Ann. § 56-1-1030 (Supp. 1993) (detailing the requirements for habitual traffic offender suspension).

Under South Carolina law, a motion for severance is addressed to the discretion of the trial court. The trial court's ruling will not be disturbed on appeal absent an abuse of discretion. *State v. Thompson,* 279 S.C. 405, 308 S.E. (2d) 364 (1983).

Different misdemeanors can be joined in the same indictment and tried together if they (1) arise out of a single chain of circumstances, (2) can be proved by the same evidence, (3) are of the same general nature, and (4) no real right of the defendant will be jeopardized. *City of Greenville v. Chapman,* 201 S.C. 157, 41 S.E. (2d) 865 (1947).[1] The charges against Anderson unquestionably meet the first three requirements because the three charges arose out of the same traffic stop. From evidence obtained as a result of this traffic stop, the jury found Anderson was driving under the influence, driving with a suspended license, and driving while his license was suspended under the Habitual Traffic Offender Act.

Regarding the fourth requirement, the admission of Anderson's prior convictions for DUS and DUI threatened no real right that Anderson possessed under the particular circumstances. Here, Anderson, as the record reflects and as Anderson's counsel indicated during argument before this court, "attempted to stipulate [to the] jurisdiction [of the trial court] in this case;" however, the solicitor did not agree to so stipulate. This meant that the state had to prove, so far as the DUS and DUI charges were concerned, that the trial court had sub-

---

[1] At the time of Anderson's trial in November 1993, each of the offenses for which he was indicted and ultimately convicted were classified as misdemeanors. The Habitual Traffic Offender Act penalties section, S.C. Code Ann. § 56-1-1100 (1991), was amended by 1993 Act No. 184, effective January 1, 1994. This act reclassified the habitual traffic offender offense as a felony. S.C. Code Ann. § 56-1-1100 (Supp. 1993). We intimate no opinion concerning what impact, if any, the amended version of the Habitual Traffic Offender Act may have upon this decision.

ject matter jurisdiction of the DUS and DUI charges for which Anderson was then being tried. S.C. Code Ann. § 56-1-460 (Supp. 1993); *id.* § 56-5-2940 (1991); *see Tyler v. State,* 247 S.C. 34, 145 S.E. (2d) 434 (1965) (holding an indictment must allege a DUI offense is a second or subsequent offense to show the court's jurisdiction). Indeed, the jury was instructed "[to] limit any consideration of any alleged prior convictions by [sic] the defendant only . . . to establish that this Court has the jurisdiction or the right to try this case. . . ." *See State v. Johnson,* 306 S.C. 119, 410 S.E. (2d) 547 (1991), *cert. denied,* 503 U.S. 993, 112 S.Ct. 1691, 118 L.Ed. (2d) 404 (1992) (when evidence of other crimes is admitted for a specific purpose, the trial court is required to give a limiting instruction to the jury to consider the evidence only for the purpose for which it is offered). Absent a stipulation as to subject matter jurisdiction, Anderson had no real right to object to the admission into evidence of his prior DUS and DUI convictions.

Although the dissent would hold the solicitor was required to agree with Anderson that the court had subject matter jurisdiction once Anderson offered to stipulate that the DUS and DUI offenses were second and subsequent offenses, Anderson himself did not make this argument, neither to the trial court nor to this court; therefore, we cannot, as much as we might want wish to do so, hold the solicitor's assent was not required.[2] *See State v. Williams,* 303 S.C. 410, 401 S.E. (2d) 168 (1991) (an issue is not preserved for appeal unless it was presented to and ruled on by the trial court); *see also State v. Parra,* 122 Wash. (2d) 590, 859 P. (2d)

---

[2]The statute that refers to the effect of a stipulation regarding subsequent DUI and reckless driving offenses. S.C. Code Ann. § 56-5-2980 (1991), provides in pertinent part:

> In all trials and proceedings in any court of this State, wherein the defendant is charged with [DUI] or [reckless driving] . . . the accused may stipulate *with the solicitor* that the charge constitutes a second or further offense, in which event the indictment shall not contain allegations of prior offenses, nor shall evidence of such prior offenses be introduced. (Emphasis added.)

The plain meaning of the statute, which has no application to a charge of DUS, suggests that the solicitor must assent before a stipulation is effective, otherwise the legislature would not have included the words emphasized above.

1231, 1238 (1993) ("Generally, a stipulation is an agreement between the parties to which there must be mutual assent."); *Bourne v. Atchison, T. & S.F. Ry. Co.*, 209 Kan. 511, 497 P. (2d) 110, 114 (1972) ("A 'stipulation' [is] an agreement, admission or concession made in judicial proceedings by the parties thereto or their attorneys."); 83 C.J.S. *Stipulations* § 3, at 3 (1953) ("[I]t is essential that [the stipulation] be assented to by the parties or those representing them."); 73 Am. Jur. (2d) *Stipulations* § 2, at 536 (1974) ("[U]nless it is clear from the record that the parties assented, there is no stipulation.").

We therefore hold the trial court did not abuse its discretion in denying Anderson's severance motion and Anderson was not prejudiced by the admission into evidence of prior convictions because the trial court gave a sufficient limiting instruction to the jury.

Affirmed.

SHAW, J., concurs.

HOWARD, J., dissents in a separate opinion.

HOWARD, Judge, dissenting:

The majority concludes the trial judge did not abuse his discretion in refusing the motion to require election of charges upon which the State intended to proceed. While I agree the motion is addressed to the sound discretion of the trial court. I conclude the failure to require election under the circumstances of this case amounted to an abuse of that discretion.

Initially, it must be noted Anderson stipulated his prior DUI and DUS convictions to establish jurisdiction in the General Sessions Court regarding the third offense DUI and DUS charges. Prior to S.C. Code Ann. Section 56-5-980 (1991), the State was entitled to introduce a defendant's prior convictions for these offenses in order to establish jurisdiction. *See State v. Pearson*, 223 S.C. 377, 76 S.E. (2d) 151 (1953). Recognizing the prejudice to the defendant, the legislature enacted 1962 Code § 46-349, now § 56-5-2980, which reads in applicable part, as follows:

> [T]he accused may stipulate with the solicitor that the charge constitutes a second or further offense, in which event the indictment shall not contain allegations of prior

offenses, nor shall evidence of such prior offenses be introduced.

In this case, the State attempted to circumvent the statute by refusing to "stipulate" to this jurisdictional foundation, but the statute is clear in giving that option to the defendant, not the State. To hold otherwise would render this portion of the statute meaningless, since the State's interest would rarely, if ever, be served by so agreeing.

The State does not assert these prior convictions would have been admissible as past crimes of moral turpitude for impeachment. *See State v. Hall,* 306 S.C. 293, 4411 S.E. (2d) 441 (Ct. App. 1991) (DUI is not a crime of moral turpitude for impeachment purposes). Nor do they argue admissibility under *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923). Thus, evidence of the prior convictions for driving under the influence and driving under suspension was not admissible, absent the charge for violating the habitual offender law.

I agree with the majority that the decision turns on an analysis of the fourth requirement necessary to try separate charges in a single trial, as set forth in *City of Greenville v. Chapman,* 210 S.C. 157, 41 S.E. (2d) 865 (1947) ("no real right of the defendant will be jeopardized"). Contrary to the majority, I conclude the substantial right of the defendant to a fair and impartial trial under the Sixth Amendment to the United States Constitution and South Carolina Constitution Article I, Section 14, has been compromised by the denial of the motion.

Though our Supreme Court allowed the joint trial of multiple misdemeanor charges in *City of Greenville,* in so holding the court made the following observation:

> We think the interest of the public and the right of the defendant will be better subserved in general by permitting as matter of law a single trial under such conditions, leaving it to the sound discretion of the trial court to order separate trials when the rights of either the commonwealth or of the defendant appear to require it.

> Circumstances might arise which would render a uniting of several counts unjust to the defendant. As the old cases put it, "By the multiplication of distinct charges, he prisoner may be confounded in his defense, or prejudiced

in his challenges, or the attention of the jury may be distracted." But the record does not disclose that appellant was prejudiced in any of these respects (citation omitted). Whenever such a situation arises, the trial court will protect the defendant's right to a fair trial by requiring an election.

*Id.* at 162, 41 S.E. (2d) at 867.

The court recognized that circumstances may require severance (or the requirement of election by the solicitor), in order to prevent prejudice. In more modern terms, the analysis involves a weighing of the State's interest in judicial economy against the possible prejudice to the defendant.

To consider the first prong of the inquiry, we must look at the practical effect upon judicial economy of separately trying the offenses. Even a cursory inspection of the burden upon the State reveals the relatively minor inconvenience to witnesses and judicial resources. The pertinent provisions of the Act read as follows:

**Section 56-1-1020.** An habitual offender shall mean any person whose record as maintained by the Department of Public Safety shows that he has accumulated the convictions for separate and distinct offenses described in subsections (a), (b) and (c) committed during a three-year period; provided, that where more than one included offense shall be committed within a one-day period such multiple offenses shall be treated for the purposes of this article as one offense:

(2) Operating or attempting to operate a motor vehicle under the influence of intoxicating liquor, narcotics or drugs;

(4) Driving a motor vehicle while his license, permit, or privilege to drive a motor vehicle has been suspended or revoked, except a conviction for driving under suspension for failure to file proof of financial responsibility;

**Section 56-1-1100.** It is unlawful for a person to operate a motor vehicle in this State while the decision of the Department of Public Safety prohibiting the operation remains in effect. A person found to be an habitual offender under the provisions of this article, who subsequently is

convicted of operating a motor vehicle in this State while the decision of the Department of Public Safety prohibiting the operation is in effect, is guilty of a misdemeanor [now felony] and must be imprisoned not more than five years.

A violation of this provision has but two elements: (1) the offender was driving on the public highways of South Carolina, and (2) the offender has been declared an habitual offender under the terms of the statute. *See State v. Goodman,* 304 S.C. 170, 403 S.E. (2d) 320 (Ct. App. 1991). Anderson does not dispute driving the vehicle. The offender observed him operating it. Thus, proof of the first element would take no more than a few minutes. Proof of the second element is established through documented evidence of the suspension as an habitual offender, which contains the driving record. This element of proof would, likewise, take but a few minutes. Under the circumstances of this case, the conclusion is inescapable that the trial of the habitual offender charge would consume very little time or judicial resources.

By contrast, the prejudicial effect of the admission of the prior DUI and DUS convictions in the trial on those offenses is obvious. In the seminal case of *State v. Lyle,* 125 S.C. 406, 417, 118 S.E. 803, 807, our court emphasized the evidence of other crimes must be strictly scrutinized before its admission because "the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors." If there is any doubt as to the connection between the acts, the accused is to be given the benefit of the doubt and the evidence should not be admitted. *State v. Wilson,* 274 S.C. 635, 266 S.E. (2d) 426 (1980).

The inference of guilt is a powerful thought difficult to resist even for the fairest of jurors, no matter the court's instructions. As our court recognized in *Lyle:*

> Proof that a defendant has been guilty of another crime equally heinous prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged. Its effect is to predispose the mind of the juror to believe the prisoner guilty, and thus effectually to strip him of the presumption of innocence.

125 S.C. at 416, 118 S.E. at 807.

The danger of prejudice is heightened where, as here, the prior offenses are "strikingly similar" to the charges being litigated. *State v. Gore*, 283 S.C. 118, 121, 322 S.E. (2d) 12, 13 (1984). This is especially so when the offense implicates the excessive consumption of addictive substances such as alcohol and drugs. There are few forms of aberrant behavior more recognized in society as repetitive in their nature than the misuse of alcohol and drugs. The risk of undue prejudice is so great that the legislature specifically prevented the introduction of this same evidence in § 56-5-2980.

The limiting instruction given by the trial judge was of no help, because it incorrectly allowed the jury to consider the prior DUI and DUS convictions for purposes of impeachment, when they were not admissible for that reason. With that instruction, the error was compounded, not alleviated. Consequently, the prejudice from a denial of the motion to severally try the charges is apparent, whereas the judicial economy served by a denial of severance is virtually non-existent. Under these circumstances, the denial of the motion was arbitrary, and an abuse of discretion.

For the foregoing reasons, I would reverse.